HIGHWAY FREIGHT COMPANY, PROSECUTOR, v. WORK-
MEN'S COMPENSATION BUREAU AND SYLVIA CALAS-
CIBETT, DEFENDANTS.

Submitted July 25, 1940—Decided August 12, 1940.

Before Justice PARKER, sitting alone, pursuant to statute.

For the prosecutor, *Arthur T. Vanderbilt.*

For the defendant Sylvia Calascibett, *Benjamin Mayer.*

PARKER, J. This is a workmen's compensation death case. Liability of the employer was conceded, the point in litigation under this writ being the method of computing the award. A short resume of the proceeding seems desirable.

Deceased was a truck driver employed by prosecutor, and paid by the trip at the rate of $25 per trip, which normally required about three days to complete. The first question to settle is whether the case is within the language of *R. S.* 34:15-37 which reads in part: "Where prior to the accident, the rate of wages is fixed by the output of the employe, the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employe earned during the preceding six months, or so much thereof as shall refer to employment by the same employer" (in this case a little over four months).

We read in the determination by the deputy commissioner that the attorneys of the respective parties were "both * * * of the opinion that the decedent should be classified as a piece worker and the rate [of wages] computed on that basis * * *." But he disagreed with both on that point, and fixed the weekly wage at $50 based on ability to make two trips a week. The accident having taken place in the State of New York, *certiorari* was awarded, bringing up the determination of the bureau directly into this court. *Sletser* v. *American Stores Co.*, 124 *N. J. L.* 228; 11 *Atl. Rep.* (*2d*) 51. After the return and filing of reasons, the petitioner widow, respondent here, filed a petition in this court, setting up that after *allocatur* she had discovered that the terms of the original contract of employment had been changed, and that at the time of his death, deceased was on a basic wage of $50 per week and not paid by the trip as first agreed. Based on this factual claim, she prayed that the writ of *certiorari* be dismissed. A rule to show cause was made, and depositions were taken thereunder and are before me. All the papers are submitted to me as a single justice, on briefs without oral argument.

I am not at all clear whether in deciding the matter the case should be considered on the writ and return, or should include the rule to show cause and depositions, as in effect part of that return. But on either basis the result I reach is the same. Under the original employment, payment was by the trip: and to me it seems perfectly clear that in the language of the statute, the rate of wages was "fixed by the output," with no minimum per week or similar provision. The claim of a later change arose out of a contract of the employer with the labor union, calling for a "salary" of $50 per week based on two round trips: but the depositions show to my satisfaction that that contract was later modified before the accident, and the trip basis restored. It is objected that the union contract was written, and the modification, if any, oral: but unless the statute of frauds intervenes (and it does not in this case) later oral modification of a written contract is perfectly legal. *Headley* v. *Cavileer*, 82 *N. J. L.* 635.

This brings us to the matter of computation. The section

of the statute already cited, and in part quoted above, provides that the weekly wage be found by multiplying the daily wage by five (days a week) as a minimum and seven as a maximum. The bureau used six as the factor. No complaint is made of this, and it seems proper enough. The trouble arises in the computation of the "daily wage" of a truck driver working practically without regard to hours, as, for example, on his first trip, which began at ten P. M. May 17, and ended at four A. M. May 20. On what basis are we to ascertain "the number of days the workman was actually employed?" The deputy commissioner ascertained that that trip lasted fifty-four hours, and assuming that a "day" meant twenty-four hours, called it two days and six hours: and treated the other trips on the same plan, obtaining a total of 1,323¾ hours, which he divided by twenty-four hours to a day, the quotient being fifty-five days and a fraction. The total received in the preceding six months was $500; and dividing this by fifty-five, we get approximately $9 a day as the statutory "daily wage;" and for a six-day week about $54. On that basis, if it be the correct basis, manifestly no harm was done to the employer by fixing $50 as the "weekly wage" for purposes of awarding compensation.

But it is argued for the prosecutor that by "the number of days the workman was actually employed" the legislature did not mean the total hours of work divided by twenty-four, but meant that if the employe worked at all on any particular day, that would count for a day. On that principle prosecutor counts as four days the first trip, which as we have seen, began May 17 at ten P. M. and ended on May 20 at four A. M. This, if pushed to an imaginary extreme, might well lead to strange results: but the legislature was not dealing with mere mathematical possibilities; it was endeavoring to formulate a working rule for the facts of everyday life. It certainly did not consider a "day" as a working period of twenty-four hours, as the bureau seems to have done. In the very section now in part under consideration, it speaks of "the customary number of working hours constituting an ordinary day in the character of the work involved." In the next section, 34:15-38, it speaks of "the number of calendar

days of disability," *i. e.,* days of twenty-four hours each, and counts as a "full day" the day of the accident and Saturdays, Sundays and holidays are included. In chapter 174 of 1913 (*Pamph. L.,* at *p.* 313) the language of the corresponding section reads: "Where prior to the accident the rate "of wages is fixed by the output of the employe, his weekly wages shall be taken to be six times his average daily earnings for a working day of ordinary length, excluding overtime. This rate of weekly wages shall be calculated by dividing the total value of the employe's output during the actual number of full working days during the preceding six months, by the number of days the workman was actually employed." Taking the section as a whole, I feel constrained to read the clause: "the number of days the workman was actually employed" as meaning "the number of days on which the workman was actually employed;" and repeat, that, as I view it, we are dealing here with practical considerations and not with ultimate possibilities. The conclusion therefore is that the calculation of a total of seventy-six days is correct. This, divided into $500 gives a quotient of $6.58 or slightly less: and a "weekly wage" of $39.48 instead of $50. The resultant figures should be modified accordingly.

The application to dismiss the writ is denied. In view of the fact that the matters relating to a change of the contract of employment are no part of the return in *certiorari,* it seems better not to deal with them in any rule for judgment, but a rule will be entered setting aside the finding of the bureau, and modifying the award to read (in the language of the determination except as to amounts of payments):

"40% of $39.48 per week, based upon two dependents, or $15.79 per week for 300 weeks from August 24, 1938.

"35% of $39.48 per week, or $13.82 per week from expiration of 300 weeks to February 2, 1951, when Richard Thomas will be sixteen years of age.

"This award is subject to modification as provided by the act in case of remarriage or death of widow before expiration of 300 weeks or death of Richard Thomas at any time prior to his attaining the age of sixteen."

The award is made directly in this court, instead of remitting the case to the bureau, in view of the rule as laid down in *Stetser* v. *American Stores Co.*, 124 *N. J. L.* 228; 11 *Atl. Rep.* (*2d*) 51.

The case seems to be one of novel impression. I am unaware of any previous decision on the point, and none has been cited in the briefs. In view of this, and of the further fact that the case is submitted without printing either record or briefs, and to a single justice between terms, no costs should be allowed.

It is not claimed that the "number of days" as used in the statute means the number of ordinary working days of eight hours each. On that basis the divisor of 1,322 hours would be eight instead of twenty-four, the quotient 165 instead of fifty-five, the statutory "daily wage" about $3, and the statutory "weekly wage" about $18.